UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD WILLIAM DOUGLAS, JR., *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>WILLIAM JOSEPH KALANTA, *et al.*,<br><br>Defendants. | Case No. 1:21-cv-01535-JLT-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS TO:<br><br>(1) GRANT THE MOTION TO DISMISS OF DEFENDANTS WILLIAM JOSEPH KALANTA, MICHAEL JAMES KALANTA, AND KIMBERLY JO HURTT;<br><br>(ECF No. 18)<br><br>(2) *SUA SPONTE* DISMISS THE CASE AGAINST DEFENDANT MODESTO POLICE DEPARTMENT;<br><br>(3) DISMISS THIS ACTION WITH PREJUDICE;<br><br>(4) DENY PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT; AND<br><br>(5) DENY DEFENDANTS' REQUEST FOR JUDICIAL NOTICE AS UNNECESSARY<br><br>(ECF Nos. 18-2, 34)<br><br>OBJECTIONS, IF ANY, DUE WITHIN TWENTY-ONE DAYS |

Plaintiffs Richard William Douglas, Jr., and Christine Anne Hurtt[1] filed a complaint on October 18, 2021, accusing the Defendants of conspiring to murder Ms. Angela Dawn

---

[1] David Henderson, a former Plaintiff in this case, was dismissed as a plaintiff on March 24, 2022, after failing to prosecute this case and failing to comply with a court order. (ECF No. 35).

Kalanta,[2] who was Richard's ex-wife and was Christine's sister. (ECF No. 1).

Defendants William Joseph Kalanta (Angela's husband), Michael James Kalanta (the son of Plaintiff Douglas and Angela), and Kimberly Jo Hurtt (Angela's sister) have moved to dismiss the case, arguing that Plaintiffs lack standing and this Court lacks jurisdiction over the case, that the complaint fails to state any claim upon which relief can be granted, that the statute of limitations bars Plaintiffs' claims, and that the doctrines of claim and issue preclusion bar this action. (ECF No. 18). Plaintiffs move for a default judgment against the only other remaining Defendant in the case, the Modesto Police Department, who has not appeared in this action. (ECF No. 34). On October 6, 2022, the assigned District Judge referred the motion to dismiss for the preparation of findings and recommendations. (ECF No. 40).

As explained below, the Court will recommend that: (1) the Defendants' motion to dismiss (ECF No. 18) be granted; (2) the case against Defendant Modesto Police Department be *sua sponte* dismissed; (3) this action be dismissed with prejudice; (4) the Plaintiffs' motion for default judgment (ECF No. 34) be denied; and (5) Defendants' request for judicial notice (ECF No. 18-2) be denied as unnecessary.

## I.    SUMMARY OF THE ALLEGATIONS

Plaintiffs' complaint alleges as follows: "Defendants are involved in organized crime, human trafficking and racketeering influenced corrupt organizations."[3] (ECF No. 1, p. 1). In December 2008, Angela called Plaintiff Douglas, expressing a fear of dying in Modesto, California, and asking him to come see her. Plaintiff Douglas arrived in January 2009 and stayed with Angela and their son, Defendant Michael Kalanta, for the next five and a half months at Michael's home in Waterford, California, which is near Modesto. During this stay, Plaintiff Douglas "witnessed constant mental and emotional abuse towards Angela from

---

[2] The Court will refer to Ms. Angela Dawn Kalanta as "Angela" in this order to distinguish her from the Defendants with whom she shares a last name. The Court intends no disrespect by using her first name in this order.

[3] Minor alterations, such as altering capitalization and correcting misspellings, have been made to some quotations from Plaintiffs' filings without indicating each change.

Defendants Michael and William Kalanta" and "also witnessed mental and emotional abuse from Defendant Kimberly Hurtt." (*Id.* at 2).

In March 2009, Angela filed for divorce from Defendant William Kalanta "because he had been abusive physically, emotionally and mentally to Angela throughout their sixteen years of marriage." (*Id.*).

In July 2005, Defendant William Kalanta was arrested and convicted for injuring Angela, resulting in her hospitalization "in [an] intensive care unit on life support." (*Id.*). Right after this incident, Defendant Michael Kalanta applied to have his named changed from Michael James Douglas to Michael James Kalanta, with the application citing the reason for this change as "respect for William and at his request." (*Id.*). Defendant William Kalanta has an extensive domestic violence record. Defendant Michael Kalanta is an attorney in Modesto, California.

Angela told Plaintiff Douglas that Defendant William Kalanta pushed her down the stairway in her home in December 2009 during an argument and while there was still a restraining order against Defendant William Kalanta. There was an ongoing argument between Angela and Defendant William Kalanta regarding $75,000 that Angela said that Defendant William Kalanta had stolen. Angela was in constant fear of Defendant William Kalanta the entire time that Plaintiff Douglas was living with Defendants, with Angela telling Plaintiff Douglas that Defendant William Kalanta "told her he would smash her head on their cement floor like he did his last wife if she tried to divorce him." (*Id.* at 3). Angela also told Plaintiff Douglas that "she found a huge cash hoard in the ceiling" of Defendant William Kalanta's office; that Defendant William Kalanta owns several properties in California and Arizona, including "a mini storage near Modesto"; and that she believed that Defendant William Kalanta had hidden the huge cash hoard in the mini storage. (*Id.*).

In May 2009, Colleen Douglas, Angela's friend, heard Defendant Michael Kalanta tell Angela, "I will get your house after you are dead." (*Id.*). Angela told Plaintiff Douglas that Defendant William Kalanta has "a secret insurance agent." (*Id.*). Defendant William Kalanta

"constantly threatened Angela if she divorced him that she 'will see what happens to her if she pulls the plug on this family.'" (*Id.*).

Angela died the same day that she had an appointment with her attorney to finalize her divorce. Her three primary care doctors said that they believed that Defendant William Kalanta had something to do with her death. Angela's divorce attorney told Plaintiff Hurtt that Defendant Michael Kalanta and his Uncle Tyler Hurtt tried to get Angela's retainer refunded to them but the attorney refused. The attorney's car was broken into soon thereafter and Angela's file was stolen.

Plaintiffs are especially harmed by Angela's murder because they "have not been able to work in any employment of [their] professions." (*Id.* at 3-4). And both have lost the love and affection of Angela.

Angela reported the abuse from Defendants William Kalanta, Michael Kalanta, and Hurtt "for years to local authorities, women's shelters, doctors, friends and family to no avail." (*Id.* at 4). One of Angela's doctors told her not to go to Defendant William Kalanta's "home because bipolar people are too dangerous to live with." (*Id.*). On the day that Defendant Michael Kalanta graduated from law school, Defendant William Kalanta called Angela "'a stupid (expletive)[4] whore' because she accidentally lost the keys to their home." (*Id.*). This "verbal assault on her in front of many people" caused Angela to cry uncontrollably. (*Id.*).

Plaintiffs possess "third-party stalking of Plaintiffs, including witness statements of [Defendant Michael Kalanta] requesting from witnesses the location and photos of Plaintiffs' vehicles on or about March 1, 2016." (*Id.*). A few days after location information was given to Defendant Michael Kalanta, "a car attempted to run over [Plaintiff Douglas]." (*Id.*). In October 2009, Defendant Michael Kalanta was riding in a car with his niece that tried to run over Plaintiff Douglas. Defendant Michael Kalanta's stepdaughter was ran over and killed in February 2010, with the responsible truck being "linked to this family through Angela's niece Cassandra Blair." (*Id.*). Prior to these incidents, Plaintiff Hurtt "was almost ran over at her

---

[4] The use of the word "expletive" in this quote is contained in the complaint itself.

4

place of employment" by associates of Defendants Michael Kalanta and Kimberly Hurtt. (*Id.* at 4-5).

Plaintiffs possess a phone recording of the Defendants discussing Angela's murder, but Defendant Modesto Police Department has refused to accept it or get the message from the phone company and has refused to cooperate with Angela's family since the beginning of this case. Defendant Modesto Police Department continues to ignore Plaintiffs' request to examine the recording.

In October 2011, Defendants sued Plaintiffs in California state court for defamation, slander, and libel and "won by default." (*Id.* at 5). Plaintiff Douglas was never legally served until months later. Plaintiffs requested a phone hearing because they lived in other states, were unable to travel, and feared Defendants, but were denied a phone hearing by Defendants' attorney, who is now permanently disbarred.

Defendant Hurtt, Angela's older sister, is a real estate agent in Colorado and has extensive organized crime contacts. She was staying with Angela and was evicted from Angela's home just before she died. Defendant Hurtt was involved in murders committed by her ex-husband, but has avoided prison.

Ashley Henderson, the daughter of former Plaintiff David Henderson, and Defendant Michael Kalanta's stepdaughter, was killed after being run over in 2010. Ashley said that Defendant Michael Kalanta records everything in his house. Plaintiff Douglas located, at Ashley's direction, a recording device in the attic of Defendant Michael Kalanta's home while living there in 2009 just before Angela died. "Defendants had Ashley murdered because she knew too much and was telling her father what was going on at [Defendant Michael Kalanta's] home." (*Id.* at 6). Plaintiff Douglas, Angela, and Ashley were constantly monitored by Defendant Michael Kalanta by telephone and vehicle tracking.

Defendants are involved in human tracking and have extensive contacts with a gangster from Dayton, Ohio.

Defendants testified in state court that Angela died of an accidental overdose of her prescription medication, which was prescribed in the same office that Defendant William

Kalanta worked. The coroner's office produced an autopsy report concluding that Angela died from "undetermined circumstances." (*Id.* at 7). Defendant William Kalanta tried to stop the autopsy, and after it was completed, had Angela cremated the same day. While at the coroner's office, Defendant Hurtt "demanded to see the body and cut off hair." (*Id.*).

A Stanislaus County district attorney has never answered Plaintiff's questions and is withholding evidence regarding the investigation into Angela's murder. Stanislaus County and Defendant Modesto Police Department committed malfeasance regarding the investigation. The California Department of Justice has generally ignored formal requests to investigate the district attorney's handling of the investigation and has committed malfeasance in the case.

All the Defendants "conspired to murder Angela to prevent alimony, child support, divorce, eviction of [Defendant William Kalanta], to collect life insurance, mortgage insurance and to shut Angela's mouth forever because she knew too much" and "Kimberly aided and abetted this operation with her extensive background in organized crime procedures." (*Id.* at 8).

A police detective has blocked Plaintiff Douglas's emails and phone calls, the California Medical Board took no action against Defendant William Kalanta after being informed of his record of domestic abuse, Defendant Modesto Police Department did not investigate Angela's home or vehicle despite her suspicious death, and numerous agencies all over the United States have been of no help. The coroner and others, including Angela's primary care physician, believe Angela was murdered and her body should have not been released to Defendant William Kalanta for cremation.

In March 2014, a deputy district attorney agreed to accept a phone recording from Plaintiff Douglas, with the recording being mailed to him the next day. However, the deputy district attorney was never heard from again. The Stanislaus County District Attorney's Office told Plaintiff Douglas that the attorney did not work there any longer and the Office had no information about the recording being sent.

Plaintiffs have no answers about what happened to Angela between May 31, 2009, and June 2, 2009, and have lost all faith in these agencies to provide help and answers to their questions about Angela's death and are thus forced to seek help from this Court. Plaintiff

Douglas called the coroner on June 2, 2009, "and told them that he believed Angela was murdered by her husband." (*Id.* at 11).

Angela told Plaintiff Douglas that Defendant William Kalanta was sneaking into her room while she was sleeping and injecting her in her thigh with an unknown substance. Plaintiff Douglas saw that Tramadol was prescribed to Angela and the bottle was supposed to contain 200 tablets. However, the bottle had only two tablets left. In April 2009, Angela was instructed by Defendant Hurtt to travel to Hurtt's home in Colorado because their grandfather wanted to see her before she died. Angela left for Colorado with approximately 200 tablets of Tramadol in a baggy. A few days after Angela arrived in Colorado, her grandfather died and was cremated without an autopsy. Defendant Hurtt collected $75,000 from their grandfather's reverse mortgage.

Angela told Plaintiff Douglas that Defendants William Kalanta and Kimberly Hurtt have "a secret insurance agent" that secures life insurance payments to them for the people that they murder. (*Id.* at 13).

Plaintiffs state that, as a result of the above allegations, they have suffered "loss of income and severe depression and disability." (*Id.*). They seek monetary damages and for this Court to order Defendants to answer their questions.

The civil sheet attached to the complaint indicates that the basis of the Court's jurisdiction is diversity jurisdiction and lists "murder" as the cause of action.

## II.     MOTION TO DISMISS

### A.     Summary of the Parties' Arguments

Defendants' motion to dismiss, filed on January 24, 2022, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), seeks to dismiss this case on multiple grounds. (ECF No. 18). Defendants argue that Plaintiffs' allegations do not demonstrate that Plaintiffs have standing, or that the Court has subject jurisdiction over this matter, because civil RICO claims must be premised on injuries to business or property, which Plaintiffs fail to allege. Similarly, Plaintiffs have failed to sufficiently allege the necessary elements of a civil RICO claim so as to state a claim upon which relief may be granted. Additionally, Defendants argue that civil RICO

claims have a four-year statute of limitations, and Plaintiffs were required to assert their allegations in this case by no later than 2013. Lastly, Defendants argue that the state court defamation suit mentioned in the complaint bars Plaintiffs from proceeding with their civil RICO claim under the doctrines of claim and issue preclusion.

As part of their motion to dismiss, Defendants have filed a request for judicial notice, asking the Court to take judicial notice of the first amended complaint and judgment in the state court defamation proceeding, which documents they have attached as exhibits. (ECF No. 18-2)

Plaintiff's response, filed on February 16, 2022, includes a host of factual allegations not included in the complaint, along with approximately 300 pages of attachments that appear intended to be offered as factual support for their allegations. (ECF No. 24). Plaintiffs offer no meaningful opposition to Defendants' standing, subject-matter jurisdiction, or failure-to-state-a-claim arguments; however, they assert that this is "a RICO and violation of civil rights" case (*id.* at 3) that "should not be dismissed with prejudice on grounds of procedural law because it is far more important for justice to be served in a murder than damage to property and or a business" (*id.* at 27). Plaintiffs argue that the "four-year statute of limitations is not up because in 2015 Plaintiff Christin [Hurtt] was assaulted with a firearm in her own home by Thomas Banfield," who was sent at the behest of Defendant Kimberly Hurtt. (*Id.* at 3). Plaintiffs also assert that "capital crimes such as the alleged capital crime in Plaintiffs' complaint have no statute of limitation under RICO." (*Id.* at 20). Lastly, they argue that the state court defamation case was never adjudicated on the merits and is not the same as this action. (*Id.* at 2-3).

Defendants' reply, filed on February 22, 2022, argues that Plaintiffs have improperly alleged new facts and submitted new documents with their opposition. (ECF No. 26). Additionally, Plaintiffs have failed to offer any substantive response to their arguments in favor of dismissal. Lastly, Defendants assert that the state court defamation case was decided after a trial where evidence was heard and argue that Plaintiff Hurtt's allegation about being assaulted with a firearm in 2015, even if accepted as true, would not render the RICO claim timely.

### B.   Standards

In considering a motion to dismiss, the Court must accept all allegations of material fact

in the complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). "[T]he court must construe the complaint in the light most favorable to the plaintiff, taking all [of the plaintiff's] allegations as true and drawing all reasonable inferences from the complaint in [the plaintiff's] favor." *Doe v. United States*, 419 F.3d 1058, 1062 (9th Cir. 2005). In addition, *pro se* pleadings "must be held to less stringent standards than formal pleadings drafted by lawyers." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010).

A motion to dismiss pursuant to Rule 12(b)(1) is a challenge to the court's subject matter jurisdiction. *See* Fed. R. Civ. P. 12 (b)(1). "A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air*, 373 F.3d at 1039. "By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id.*

A motion to dismiss pursuant to Rule 12(b)(6) operates to test the sufficiency of the complaint. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer*, 416 U.S. at 236.

The first step in testing the sufficiency of the complaint is to identify any conclusory allegations. *Iqbal*, 556 U.S. at 679. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations and quotation marks omitted). After assuming the veracity of all well-pleaded factual allegations, the second step is for the court to determine whether the complaint pleads "a claim to relief that is plausible on its face."

*Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556) (rejecting the traditional 12(b)(6) standard set forth in *Conley*, 355 U.S. at 45-46). A claim is facially plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The standard for plausibility is not akin to a "probability requirement," but it requires "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

In deciding a Rule 12(b)(6) motion, the Court generally may not consider materials outside the complaint and pleadings. *Cooper v. Pickett*, 137 F.3d 616, 622 (9th Cir. 1998); *Gumataotao v. Dir. of Dep't of Revenue & Taxation*, 236 F.3d 1077, 1083 (9th Cir. 2001).

### C.    Analysis

#### 1.    Civil RICO claim

##### a.    Standing

Defendants argue that Plaintiffs lack standing to bring a civil RICO claim because they have not sustained the type of injuries—to business or property—that the civil RICO statute provides for. (ECF No. 18-1, p. 24). And they argue that, without standing, this Court lacks subject-matter jurisdiction over this case.

As an initial matter, although Defendants argue that this Court lacks jurisdiction because Plaintiff's do not have statutory standing under RICO, Defendants' argument implicates Plaintiffs' ability to state a claim under Rule 12(b)(6), not the Court's jurisdiction under Rule 12(b)(1). *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) ("It is firmly established in our cases that the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, *i.e.*, the courts' statutory or constitutional power to adjudicate the case."); *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174-75 (9th Cir. 2004) (discussing difference between Article III standing, which implicates a court's subject-matter jurisdiction, and statutory standing, which implicates a plaintiff's ability to state a claim).

Turning to the statute, "[t]he Racketeer Influenced and Corrupt Organizations Act (RICO or Act), 18 U.S.C. §§ 1961–1968, provides a private right of action for treble damages

to "[a]ny person injured in his business or property by reason of a violation" of the Act's criminal prohibitions. § 1964(c)." *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 641 (2008); § 1964(c) ("Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee . . . .").[5]

"To have standing under § 1964(c), a civil RICO plaintiff must show: (1) that his alleged harm qualifies as injury to his business or property; and (2) that his harm was 'by reason of' the RICO violation, which requires the plaintiff to establish proximate causation." *Canyon Cnty. v. Syngenta Seeds, Inc.*, 519 F.3d 969, 972 (9th Cir. 2008) (quoting § 1964(c)).

As an initial matter, the Court must determine what allegations are properly before it. As noted above, Plaintiffs' opposition contains a host of allegations not contained in the complaint and attaches approximately 300 pages of new documents. The Court agrees with Defendants that new allegations in an opposition to a motion cannot be used to defeat dismissal and the only proper allegations for the Court to consider are those contained in the complaint itself. *See Schneider v. California Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) (concluding that new allegations in opposition were irrelevant for Rule 12(b)(6) purposes and that "court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss"). However, even if the new allegations in the opposition could be considered to defeat dismissal, none of the new allegations suffice to establish standing.

Parts of Plaintiffs' opposition brief appears to argue that their complaint need not allege any injury to achieve standing under RICO. (*See* ECF No. 24, p. 19 – "This compliant should not be dismissed because this case involves the taking of a Human Life, not just the taking of money or damages to property."; p. 27 – "The murder of a battered wife . . . should not be dismissed with prejudice on the grounds of procedural law because it is far more important for

---

[5] Section 1962, referenced in § 1964(c), generally prohibits activities involving racketeering.

1   justice to be served in a murder than damage to property and or a business again . . . .").

2   However, any such argument fails in light of the authority noted above. *See Canyon Cnty.*, 519

3   F.3d at 972 (noting that a plaintiff "must show" such injury to have standing).

4        Turning to the injuries that Plaintiffs allege, the complaint states: "As a proximate result

5   of the above-described allegations, Plaintiffs have suffered substantial loss of income and

6   severe depression and disability from the death of [our] loved one, Angela. Plaintiffs have lost

7   their loved one and have no answers from Modesto police." (ECF No. 1, p. 13). Elsewhere,

8   Plaintiffs state that they "have not been able to work" since Angela's murder and that Plaintiff

9   Hurtt "lost her career as a direct result." (*Id.* at 3-4).

10        Plaintiffs' allegations that Angela's death has caused them personal suffering, such as

11   depression, do not constitute losses to business or property under the civil RICO statute. *Lauter*

12   *v. Anoufrieva*, 642 F. Supp. 2d 1060, 1085 (C.D. Cal. 2009) ("[P]laintiff's alleged emotional

13   distress and humiliation are personal injuries not compensable under RICO."). As for Plaintiffs'

14   alleged loss of income and employment, "[a]n injury is compensable under RICO if it

15   constitutes 'harm to a specific business or property interest' and if the alleged business or

16   property interest is cognizable under state law." *Id. at* 1084. The Ninth Circuit, observing that

17   California recognizes as torts both intentional interference with contract and interference with

18   prospective business relations, has recognized a qualifying injury where a plaintiff was unable

19   to "fulfill his employment contract or pursue valuable employment opportunities because he

20   was in jail." *Diaz v. Gates*, 420 F.3d 897, 900 (9th Cir. 2005). However, the Court also

21   concluded that its approach should not be taken as conferring standing simply because a

22   plaintiff was "suave enough to allege lost employment." *Id.* at 901. That is what Plaintiffs have

23   done here by alleging "loss of income" and employment without any supporting facts. Such

24   conclusory allegations are insufficient to identify a harm to "a specific business or property

25   interest." Accordingly, Plaintiffs have failed to sufficiently allege standing under the civil

26   RICO statute and thus fail to state a claim upon which relief may be granted.[6]

27

28   [6] Defendants offer additional reasons for why Plaintiffs have failed to state a claim. However, the Court need not reach these arguments given the other bases to dismiss this case. (*See* ECF No. 18-1, p. 21-24).

**b.     Statute of limitations**

Additionally, Defendants argue that Plaintiffs' civil RICO claim is barred by the statute of limitations. (ECF No. 18-1, p. 20). One court within this District has explained the governing law as follows:

> The statute of limitations for civil RICO actions, imported from the Clayton Act, is four years. *Agency Holding Corp. v. Malley-Duff & Assoc., Inc.*, 483 U.S. 143, 156 (1987); *Pincay v. Andrews*, 238 F.3d 1106, 1108 (9th Cir. 2001). When applying this statute of limitations, courts in the Ninth Circuit follow the "injury discovery" rule, which has two components. *Grimmett v. Brown*, 75 F.3d 506, 510 (9th Cir. 1996). "First, the civil RICO limitations period begins to run when a plaintiff knows or should know of the injury that underlies [the] cause of action." *Id.* (internal quotation omitted); *Pincay*, 238 F.3d at 1109 (noting that either "actual or constructive notice" begins statute of limitations). The second component is the "separate accrual rule," "which provides that a new cause of action accrues for each new and independent injury, even if the RICO violation causing the injury happened more than four years before." *Grimmett*, 75 F.3d at 510.

*Gianelli v. Schoenfeld*, No. 2:21-cv-00477J-AM-KJN (PS), 2021 WL 4690724, at *6 (E.D. Cal. Oct. 7, 2021), *report and recommendation adopted*, 2021 WL 5154163 (E.D. Cal. Nov. 5, 2021).

The complaint demonstrates that Plaintiffs knew the facts underlying their civil RICO claim in 2009 when Angela was murdered. For example, Plaintiff Douglas told the coroner in June 2009 that he believed that Angela had been murdered by Defendant William Kalanta. (ECF No. 1, p. 11). Moreover, as to both Plaintiffs, the complaint recites facts relating to events preceding Angela's death that led them to later believe that she had been murdered—such as Plaintiff William Kalanta's alleged 2005 assault on Angela and the allegedly unusual circumstances surrounding the death of Angela's grandfather. (*Id.* at 2, 12-13). Perhaps most notably, Plaintiffs' complaint acknowledges that, in 2011, they were sued based on their allegations that some of the Defendants had murdered Angela. (*Id.* at 5). Regardless of whether Angela's 2009 death or the 2011 defamation suit is used as the date for when Plaintiffs knew the injury underlying their civil RICO claim, the four-year statute of limitations would have expired well before this case was filed in October 2021.

Plaintiffs present no challenge to Defendants' argument about when they knew the basis for their civil RICO claim; however, Plaintiffs argue that the "four-year statute of limitations is not up because in 2015 Plaintiff Christin [Hurtt] was assaulted with a firearm in her own home by Thomas Banfield," who was sent at the behest of Defendant Kimberly Hurtt. (*Id.* at 3). However, setting aside the fact that this allegation is not contained in the complaint, the four-year limitations period would have expired in 2019, again before the complaint was filed in October 2021.[7]

Elsewhere, Plaintiffs assert that "capital crimes such as the alleged capitol crime in Plaintiffs' complaint have no statute of limitation under RICO." (*Id.* at 20). This argument relies on 18 U.S.C. § 3282, which states that criminal prosecutions for non-capital crimes must be instituted within five years after the commission of the offense. Relatedly, § 3281 provides that "[a]n indictment for any offense punishable by death may be found at any time without limitation." However, these statutes concern the limitations period for prosecuting criminal cases—they do not concern civil RICO claims that concern murder. As discussed later, to the extent that Plaintiffs seek to do so, they cannot compel the criminal prosecution of Defendants. *See Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 156 (1987) (declining to apply "the 5-year statute of limitations for criminal RICO actions [to civil RICO actions because it] does not reflect any congressional balancing of the competing equities unique to civil RICO actions or, indeed, any other federal civil remedy" and instead concluding that "the Clayton Act offers the better federal law analogy").

Based on the forgoing, the four-year limitations period for civil RICO claims bars Plaintiffs from proceeding on the allegations in their complaint. Moreover, because Plaintiffs' civil RICO claim is "barred by the statute of limitations, any amendments would [be] futile"

---

[7] The Court notes that the complaint alleges that Plaintiff Douglas was almost run over by a vehicle in 2016. Assuming that Plaintiffs would wish to argue that a claim based on this allegation were timely, the statute of limitations would have expired in 2020, which is still before Plaintiffs filed their complaint. (ECF No. 1, p. 4).

14

and thus the Court will recommend that this action be dismissed with prejudice.  *Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*, 522 F.3d 1049, 1060 (9th Cir. 2008).[8]

  **2.**  **RICO and civil rights claims against Defendant Modesto Police Department**

  As to the civil RICO claim against Defendant Modesto Police Department, the Court will *sua sponte* recommend that this claim be dismissed as time-barred under the four-year limitations period for the same reasons discussed above in conjunction with the Defendants' motion to dismiss. *See Levald, Inc. v. City of Palm Desert*, 998 F.2d 680, 687 (9th Cir. 1993) (concluding that a court may *sua sponte* dismiss a complaint as untimely); *Benjamin-Sohal v. City of Berkeley Police Dep't*, No. C98-3364 FMS, 1998 WL 908944, at *1 (N.D. Cal. Dec. 18, 1998), *aff'd in part, vacated in part on other grounds*, 229 F.3d 1156 (9th Cir. 2000) (*sua sponte* raising statute-of-limitations issue even though a defendant police department did not file a motion to dismiss where the plaintiff was on notice that plaintiff's claims were subject to a statute-of-limitations defense as a result of the motion to dismiss of another defendant).

  Additionally, the Court notes that Plaintiffs appear to also bring a civil rights claim as to Defendant Modesto Police Department, with their opposition stating, "This is a RICO *and* violation of civil rights claim." (ECF No. 24, p. 3) (emphasis added). Elsewhere in the opposition, Plaintiffs state that "[t]he precise nature of Plaintiffs' claims are [the] Stanislaus Court and Modesto Police have and are still violating our Civil rights to due process and plaintiffs are alleging malfeasance of the police an[d] county in the mishandling of the Capital murder of Angela [] including a botched investigation." (*Id.* at 25). While, as noted above, the Court cannot consider new factual allegations in an opposition brief, the Court will consider Plaintiffs' similar allegations in the complaint—namely that Defendant Modesto Police Department has failed to conduct an adequate criminal investigation into Angela's alleged

---

[8]   Given the multiple bases to dismiss the civil RICO claim, the Court need not address Defendants' remaining argument—that the doctrines of claim and issue preclusion also bar this lawsuit. Accordingly, the Court will recommend that Defendants' request for judicial notice of the state court defamation case documents be denied as unnecessary. (ECF No. 18-2).

murder and answer Plaintiffs' questions about her case—to see if it falls within any cognizable civil rights claim.[9]

Evaluating this claim includes an evaluation of the Court's subject matter jurisdiction and thus may be considered *sua sponte* even though Defendant Modesto Police Department has not filed a motion to dismiss on this basis. *See Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1194 n. 2 (9th Cir. 1988) ("It is elementary that the subject matter jurisdiction of the district court is not a waivable matter and may be raised at anytime by one of the parties, by motion or in the responsive pleadings, or *sua sponte* by the trial or reviewing court."). This is because "Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "Article III, § 2, of the Constitution delineates [t]he character of the controversies over which federal judicial authority may extend. And lower federal-court jurisdiction is further limited to those subjects encompassed within a statutory grant of jurisdiction. Accordingly, the district courts may not exercise jurisdiction absent a statutory basis." *Home Depot U. S. A., Inc. v. Jackson*, 139 S. Ct. 1743, 1746 (2019) (alteration in original) (citations and internal quotation marks omitted).

A potentially applicable civil rights statute is 42 U.S.C. § 1983, which provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *see also Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 618 (1979); *Hall v. City of Los Angeles*, 697 F.3d 1059, 1068 (9th Cir. 2012); *Crowley v. Nevada*, 678 F.3d 730, 734 (9th Cir.

---

[9] While this allegation also mentions the "Stanislaus Court," it is not a defendant in this action, and thus the Court will not consider any claim against it.

16

2012); *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006).  To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution or federal law. *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *see also Marsh v. County of San Diego*, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law").

Here, the constitutional provision potentially implicated by Plaintiffs' allegations is the First Amendment, which provides that Congress shall make no law abridging the right of the people "to petition the Government for a redress of grievances."  U.S. Const. amend. I.  The right to petition the government is "cut from the same cloth as the other guarantees" in the First Amendment and is "an assurance of a particular freedom of expression." *McDonald v. Smith*, 472 U.S. 479, 482 (1985). However, the Petition Clause guarantees only that an individual may "speak freely and petition openly" and that he or she will be free from retaliation by the government for doing so. *Smith v. Arkansas State Highway Employees, Local 1315*, 441 U.S. 463, 465 (per curiam). The First Amendment does not guarantee that there will be any government response to a petition or that the government will take any action regarding the relief demanded by the petitioner. *Harvey v. Jordan*, No. C 05-5398 CRB (PR), 2006 WL 8435179, at *1 (N.D. Cal. June 5, 2006) ("Although plaintiff has a First Amendment right to petition the government for redress of grievances, he has no right to a response or any particular action.").

Specifically, the First Amendment does not impose an affirmative obligation on the government to consider, respond to, or grant any relief on a citizen's petition for redress of grievances. *Id.*; *see also Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999) ("A citizen's right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views."); *We the People Foundation, Inc. v. United States*, 485 F.3d 140, 141 (D.C. Cir. 2007) ("[T]he Petition Clause does not provide a right to a response or official consideration [of a citizen's grievance]."); *Trentadue v. Integrity Committee*, 501 F.3d 1215, 1237 (10th Cir. 2007) ("[T]he right to petition confers no attendant right to a response from the government."); *Hilton v. City of Wheeling*, 209 F.3d 1005, 1007

1   (7th Cir. 2000) ("[W]hile the government may not interfere with the right to petition, it need

2   not grant the petition, no matter how meritorious it is.") (citations omitted).

3          With these standards in mind, the Court concludes that Plaintiffs' allegations about

4   Defendant Modesto Police Department failing to adequately conduct an investigation, respond

5   to their attempts to facilitate the investigation, and answer their questions about Angela's death

6   do not state any cognizable First Amendment claim. Simply put, assuming these allegations are

7   true,"[t]he Constitution impose[s] no affirmative obligation on [Defendant Modesto Police

8   Department] to investigate or act on the information [that Plaintiff's] shared . . . ." *Rowe v. Las*

9   *Vegas Metro. Police Dep't*, No. 2:21-CV-00724-JAD-BNW, 2022 WL 358144, at *3 (D. Nev.

10   Feb. 4, 2022).

11          Further, to the extent that Plaintiffs seek to compel the criminal prosecution of

12   Defendants, "federal law does not allow a private citizen to bring a criminal prosecution against

13   another citizen. Criminal actions are initiated by the state, not by private citizens." *Lipsey v.*

14   *Reddy*, No. 1:17-CV-00569-LJOB-AM (PC), 2017 WL 4811723, at *4 (E.D. Cal. Oct. 24,

15   2017), *report and recommendation adopted*, 2017 WL 5070338 (E.D. Cal. Nov. 3, 2017). This

16   is because "a private citizen lacks a judicially cognizable interest in the prosecution or

17   nonprosecution of another." *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973). Thus,

18   "[w]hatever 'crimes' the named defendants may have been committing, they do not provide a

19   basis for the court's jurisdiction over [Plaintiffs'] civil suit." *Selck v. Volunteers of Am.*, No.

20   2:21-CV-1500-MCE-KJN (PS), 2022 WL 159037, at *2 (E.D. Cal. Jan. 18, 2022), *report and*

21   *recommendation adopted*, 2022 WL 396845 (E.D. Cal. Feb. 9, 2022).

22          Given that Plaintiffs have failed to identify any cognizable civil rights action relating to

23   their allegations that Defendant Modesto Police Department has failed to act appropriately

24   regarding Angela's murder, the Court lacks subject-matter jurisdiction over this claim. *See*

25   *Bator v. Siskiyou Cnty.*, No. 2:16-CV-2073-GEB-CMK, 2017 WL 698268, at *2 (E.D. Cal.

26   Feb. 21, 2017) (dismissing purported civil rights violations after the plaintiffs failed "to

27   reference to any legal theory of damages cognizable under federal law"). And because

28   Plaintiffs' allegations relate to no cognizable civil rights claim, the Court further recommends

that these allegations be dismissed against Defendant Modesto Police Department with prejudice. *See Asberry v. Biter*, No. 1:16-CV-01741-DAD-MJS (PC), 2017 WL 6730489, at *2 (E.D. Cal. Dec. 29, 2017), *report and recommendation adopted*, 2018 WL 1014116 (E.D. Cal. Feb. 21, 2018) (concluding that leave to amend would be futile where there were "no new cognizable claims").

### III.    MOTION FOR DEFAULT JUDGMENT

Relying on Federal Rule of Civil Procedure 55(b), which allows a plaintiff to seek a default judgment against a defendant, Plaintiffs argue that the entry of a default judgment is proper against Defendant Modesto Police Department because it has failed to timely respond to their complaint after having been properly served. (ECF No. 34). However, assuming that Defendant Modesto Police Department was properly served and yet still failed to respond to the complaint, "[a] defendant's default does not automatically entitle the plaintiff to a court-ordered judgment."[10] *PepsiCo, Inc. v. California Sec. Cans*, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002).

Importantly, as discussed above, Plaintiffs fail to identify any cognizable civil rights claim against Defendant Modesto Police Department and thus this Court lacks subject-matter jurisdiction over the accompanying allegations. Accordingly, default judgment would be improper on this claim. *See In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999) ("To avoid entering a default judgment that can later be successfully attacked as void, a court should determine whether it has the power, i.e., the jurisdiction, to enter the judgment in the first place."). Moreover, as to the civil RICO claim, the expiration of the four-year limitations period likewise makes entry of a default judgment improper. *See Joe Hand Promotions, Inc. v. Tu Minh Nguyen*, No. 10-CV-3504-LHK, 2011 WL 1642306, at *2 (N.D. Cal. May 2, 2011) ("A court may deny a motion for entry of default judgment where a statute of limitations defense is apparent on the face of the complaint."). Accordingly, the Court will recommend that

---

[10] Even though the Court permitted the Clerk of Court to enter a Clerk's entry of default under Rule 55(a), it specifically declined to address whether service was properly achieved in this case. (ECF No. 32, p. 2).

Plaintiffs' motion for default judgment be denied.

**IV.     CONCLUSION AND RECOMMENDATIONS**

For the reasons given above, the Court concludes that Plaintiffs fail to establish standing for their civil RICO claim and otherwise fail to state a claim, the civil RICO claim is time-barred, and Plaintiffs fail to allege a civil rights cause of action to invoke the Court's subject-matter jurisdiction concerning their allegations that Defendant Modesto Police Department has not answered their questions.

Under Rule 15(a)(2) of the Federal Rules of Civil Procedure, "the court should freely give leave [to amend] when justice so requires." However, "[d]ismissal without leave to amend is proper if it is clear that the complaint could not be saved by amendment." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051 (9th Cir. 2008). Here, the grounds for dismissal render leave to amend futile.

Accordingly, IT IS RECOMMENDED as follows:

1.  The motion to dismiss (ECF No. 18) of Defendants William Joseph Kalanta, Michael James Kalanta, and Kimberly Jo Hurtt be granted;

2.  The case against Defendant Modesto Police Department be *sua sponte* dismissed;

3.  All claims and Defendants be dismissed with prejudice;

4.  Plaintiff's motion for default judgment (ECF No. 34) be denied;

5.  Defendants' request for judicial notice be denied as unnecessary (ECF No. 18-2); and

6.  The Clerk of Court be directed to close this case.

These Findings and Recommendations will be submitted to the United States District Court Judge assigned to this action pursuant to the provisions of 28 U.S.C. § 636 (b)(1). Within twenty-one (21) days after being served with a copy of these Findings and Recommendations, any party may file written objections with the court and serve a copy on all parties.[11] Such a

---

[11] These findings and recommendations shall service as notice to Plaintiffs that the claims against Defendant Modesto Police Department may *sua sponte* be dismissed and Plaintiffs shall have the opportunity to be heard by being permitted to file objections within twenty-one days of these findings and recommendations. *See Baldhosky v. California*, No. 1:14-CV-00166-LJO-MJS (PC), 2018 WL 1407103, at *3 (E.D. Cal. Mar. 21, 2018) (noting that a *sua sponte* dismissal generally requires notice and an opportunity to be heard before the dismissal).

document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen (14) days after service of the objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **November 7, 2022**        /s/ *Erica P. Grosjean*
                                     UNITED STATES MAGISTRATE JUDGE

21